# IN THE COURT OF APPEALS OF IOWA

No. 14-0390
Filed December 24, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**WALTER BAYLOR,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, John D. Telleen (motion to suppress), Gary D. McKenrick (bench trial), and Stuart P. Werling (sentencing), Judges.

Walter Baylor appeals his convictions for possession of marijuana, third offense, and failure to affix a tax stamp. **REVERSED AND REMANDED.**

Thomas J. O'Flaherty of O'Flaherty Law Firm, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, Michael J. Walton, County Attorney, and Kelly Cunningham and Dion Trowers, Assistant County Attorneys, for appellee.

Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VOGEL, P.J.**

Walter Baylor appeals his convictions for possession of marijuana, third offense, in violation of Iowa Code sections 124.204(4)(m), 124.401(5), and 124.411 (2011), and failure to affix a tax stamp, in violation of Iowa Code sections 453B.1(3)(b), 453B.3, 453B.7(1), and 453B.12.  Baylor asserts the district court erred in denying his motion to suppress and also argues his convictions are not supported by sufficient evidence.  He further claims the procedures by which he waived his right to a jury trial were deficient, and therefore, trial counsel was ineffective for failing to object.  Finally, Baylor argues the district court did not recite adequate reasons for imposing its sentence.

Because we find the State failed to offer the evidence needed to support its assertion the inventory-search exception applied to the warrantless search of Baylor's vehicle, we conclude the district court should have granted Baylor's motion to suppress.  We therefore remand the case to the district court for a new trial absent the evidence obtained from the search of Baylor's vehicle.  Because the resolution of the first issue is dispositive, we need not address the other claims of error.

## I. Factual and Procedural Background

The minutes of testimony show the following facts.  On September 15, 2012, police were called to a convenience store in Walcott, Iowa, due to reports of a man causing a disturbance.  Officer James Morris interviewed Ashley Copeland, a store clerk, who informed Officer Morris that she and her boyfriend, Walter Baylor, had argued.  Sherriff's Deputy Ryan Storm located Baylor on foot approximately one block away from the store, at which point Officer Morris joined

Deputy Storm to interview Baylor. Baylor produced an identification card but no driver's license and informed the officers he had been arguing with Copeland because she thought he was cheating on her. A male employee—Brian Bell—then asked Baylor to leave. Although the two exchanged words in the parking lot, no physical altercation occurred. Officer Morris inquired about Baylor's car, and Baylor stated he had been dropped off at the gas station.

The officers placed Baylor in the police car and transported him back to the store. When interviewed by police, Copeland claimed Baylor had come to the store to see her because she had broken up with him. Baylor began yelling at her, after which Bell requested that he leave. Bell told the officers he had observed Baylor drive away in a silver Pontiac Bonneville with no plates. Copeland stated she was unsure how Baylor had arrived at the store. Officer Morris located the Bonneville with no plates—close to where Baylor had been picked up—and then confirmed Baylor's driving privileges had been suspended. When Officer Morris informed Baylor he had found the Bonneville and asked how Baylor had arrived at the store, Baylor shook his head and smiled.

Baylor was arrested for driving while suspended. During a weapons check, $150 in cash was found in his front pocket, and after he was placed in the squad car, Baylor stated he had been driving the Bonneville but was afraid to say anything. He also said he was two months behind in rent and could not afford to go to jail. Officer Morris requested that a towing company pick up the car. According to the minutes of testimony, "Officer Morris then walked over to the Bonneville to inventory the vehicle's contents incident to tow. As Officer Morris opened the driver's side door he could smell a strong odor of marijuana. Due to

the probable cause this then was a vehicle search." The search resulted in the discovery of over 42.5 grams of marijuana in a plastic bag, a digital scale with residue, and a cell phone.

After Baylor was transported to jail, a search warrant was issued for the cell phone found in the car. The text messages found in the phone were contained in the minutes of testimony, which indicated that Baylor was the owner of the phone. No further record was made, either at trial or at the suppression hearing. Rather, the parties and the district court relied fully on the minutes of testimony.

Baylor was charged by trial information with possession of marijuana with intent to deliver, third offense, and failure to affix a tax stamp. A motion to suppress was filed on December 7, 2012, alleging the lack of a warrant to search the vehicle rendered the search unconstitutional and, therefore, all evidence obtained from the search should be suppressed. The district court found the search "was justified as an inventory search of Defendant's vehicle prior to it being impounded" and denied the motion in a written ruling.[1] Following the State's offer to limit itself to arguing in support of a ten-year sentence, Baylor waived his right to a jury trial during an on-the-record colloquy, though no written waiver was entered. A bench trial on the minutes was held, and the district court convicted Baylor of possession of marijuana, third offense, and failure to affix a

---

[1] The motion was withdrawn but, following a substitution of counsel, was reinstated. The State's resistance argued the search was reasonable based initially on the inventory exception to the warrant requirement and, once the car was opened and the strong smell of marijuana presented itself to the officer, probable cause then existed to conduct a search prior to having the vehicle towed. An unreported hearing was held, and the parties agreed the motion would be decided based on the minutes of testimony.

tax stamp. On March 7, 2014, the court sentenced Baylor to a term of incarceration not to exceed five years on each count, with the terms to run consecutively. Baylor appeals.

## II. Motion to Suppress

Baylor first contends the district court erred in denying his motion to suppress, asserting the search was unreasonable under the Fourth Amendment of the United States Constitution.[2] He argues the court improperly found the search was reasonable based on the inventory search exception to the warrant requirement and argues no other exception applies. Consequently, he claims the results of the search should have been suppressed. The State argues: (1) Baylor does not have standing to argue he had a reasonable expectation of privacy in the vehicle;[3] (2) the inventory search was properly conducted; and (3) probable cause supported the warrantless search.

---

[2] Baylor also refers to the Iowa Constitution but makes no argument a more stringent standard should be used. Consequently, we will confine our analysis to the grounds raised in his appeal. *See Reilly v. Iowa Dist. Ct.*, 783 N.W.2d 490, 494 (Iowa 2010) ("Because Reilly has not advanced a standard for interpreting the due process clause under the Iowa Constitution different from its federal constitutional counterpart, we will apply the general principles as outlined by the United States Supreme Court.").

[3] The State contends that because Baylor was not the owner of the vehicle and initially claimed no valid or legal possession of it he cannot claim he had a reasonable expectation of privacy in the Bonneville. The State acknowledges in its brief that this issue was not raised before the district court, but it asserts the issue was not waived, citing *State v. Brooks*, 760 N.W.2d 197, 203 (Iowa 2009), for support. In *Brooks*, our supreme court held the State could challenge a defendant's reasonable expectation of privacy for the first time on appeal when the State remained silent or neglected to raise the issue of standing in the lower court. 760 N.W.2d at 203. However, *Brooks* does not lend support for the State's argument here because, unlike *Brooks*, the State made an affirmative assertion at the district court which is inconsistent with now asserting Baylor did not have a reasonable expectation of privacy in the vehicle. The State claimed in the district court and on appeal that Baylor had constructive possession of the drugs found in the car. This precludes the State from claiming Baylor did not have a reasonable expectation of privacy in the vehicle for the first time on appeal. *See id.* at 202–03 (citing *Steagald v. United States*, 451 U.S. 204, 209 (1981), which held the State could not challenge the defendant's expectation of privacy in the place searched for the first time

We review constitutional claims de novo, that is, we make an independent evaluation of the totality of the circumstances as shown by the entire record. *State v. Allensworth*, 748 N.W.2d 789, 792 (Iowa 2008). A person is protected against unreasonable searches and seizures, and therefore, a search conducted without prior court approval is per se unreasonable unless it falls into a category that is an exception to the Fourth Amendment's warrant requirement. *Id.*

The State argues the smell of marijuana gave the officer probable cause to search in light of the exigent circumstances resulting from the fact the smell was coming from a vehicle. *See State v. Eubanks*, 355 N.W.2d 57, 59 (Iowa 1984) (finding the officer had probable cause and exigent circumstances existed to search the vehicle without a warrant when the police officer smelled marijuana emanating from the vehicle). We agree; however, in order for the automobile exception to apply in this case, the officer first must be in a lawful position to have smelled the contraband (i.e., open the vehicle's door). The State claims the inventory exception to the warrant requirement permitted Officer Morris to open the car's door without a warrant. *See Allensworth*, 748 N.W.2d at 796 (noting probable cause for an automobile-exception search may evolve from the discovery of contraband in the course of a proper inventory search).

"The legality of an inventory search depends on two overlapping inquiries: the validity of the impoundment and the scope of the inventory. If either is unreasonable, the search violates the Fourth Amendment and evidence

---

on appeal where the State relied on constructive possession to tie the defendant to the drugs found in the closet of a house). Because the issue was not raised below and the State made an affirmative assertion that is contradictory to now challenging standing for the first time on appeal, we conclude the State has waived its challenge that Baylor did not have a reasonable expectation of privacy in the vehicle. *See id.*

discovered in the search must be suppressed." *State v. Huisman*, 544 N.W.2d 433, 436 (Iowa 1996). "Before a valid inventory search can be conducted, however, the government official must first properly seize or impound the defendant's vehicle." *State v. Jackson*, 542 N.W.2d 842, 845 (Iowa 1996). The impoundment is reasonable if there are "reasonable standardized procedures and a purpose other than the investigation of criminal activity." *Huisman*, 544 N.W.2d at 437.

The State acknowledges it failed to provide any evidence at the motion to suppress hearing of the standardized procedures the Walcott Police Department use when deciding whether to impound vehicles. However, it claims even without evidence of the inventory procedures the decision to impound the vehicle in this case was valid because the vehicle did not have license plates as required by Iowa Code section 321.17.[4] In support, the State cites *State v. Aderholdt*, 545 N.W.2d 559, 565 (Iowa 1996), in which the court stated, "Just as a trooper could not permit the driving of a stolen vehicle, so also the trooper could not lawfully permit an unregistered vehicle to be driven."

In *Aderholdt*, the police pulled over a vehicle while it was driving on the interstate because the occupants of the vehicle were not wearing their seat belts. 545 N.W.2d at 561. The officer issued the driver and passenger citations for the seat-belt violations but was suspicious the vehicle was transporting narcotics

---

[4] Iowa Code section 321.17 provides,

> It is a simple misdemeanor punishable as a scheduled violation under section 805.8A, subsection 2, for any person to drive or move or for an owner knowingly to permit to be driven or moved upon the highway a vehicle of a type required to be registered under this chapter which is not registered, or for which the appropriate fees have not been paid, except as provided in section 321.109, subsection 3.

because of the lack of registration and the suspicious title documents. *Id.* at 561–62. The officer decided to impound the vehicle until the registration issue was settled. *Id.* at 562. Neither the driver nor passenger was arrested or in custody at the time the vehicle was impounded, and they were told they were free to leave. *Id.* After the vehicle was towed to the garage, an inventory search was conducted, and drugs were found in the car. *Id.* The officers then located the driver and passenger and placed them under arrest. *Id.*

In contrast, in this case the vehicle was parked on the street "in front of the driveway to the condos." Baylor was under arrest for driving while suspended, and the witnesses identified Baylor as the only occupant of the vehicle. While the vehicle was not able to be legally driven or moved without license plates, there is no indication in the record that would tend to show it was likely to be driven in such a state such as would have justified the police officer in impounding the vehicle to prevent a violation of section 321.17. There is no indication in the record as to who owned the vehicle or to indicate the vehicle had been parked on the street for more than twenty-four hours. *See* Iowa Code § 321.89(1), (2) (defining an abandoned vehicle to include one left unattended for more than twenty-four hours lacking current registration plates and authorizing a police authority to seize abandoned vehicles). There is no information in the record to indicate the vehicle was illegally parked or was a hazard to the motoring public. *See id.* (defining abandoned vehicles to include illegally parked vehicles or vehicles parked on the highway creating a hazard); *see also* Iowa Admin. Code r. 661-6.1 (permitting the department of public safety to impound vehicles determined to be abandoned as defined in section 321.89(1)). Most

importantly, we do not have any information in the record indicating when and how law enforcement in Walcott makes the decision to impound vehicles. *See Huisman*, 544 N.W.2d at 437 (holding the impoundment is reasonable if there are "reasonable standardized procedures and a purpose other than the investigation of criminal activity").

The State had the burden to prove by a preponderance of the evidence that the warrantless search falls within one of the recognized exceptions. *See State v. Watts*, 801 N.W.2d 845, 850 (Iowa 2011). In the context of an inventory search, the government must produce evidence that the impoundment and the inventory search procedures were in place and that law enforcement complied with those procedures. *United States v. Kennedy*, 427 F.3d 1136, 1144 (8th Cir. 2005). At the suppression hearing, the State agreed to permit the court to decide the motion to suppress based solely on the minutes of testimony, which completely fail to provide even the barest of information to support the State's assertion the inventory-search exception applied in this case. *See Huisman*, 544 N.W.2d at 437 (stating the police policies on impounding vehicles "need not be exclusively written"). Because the State failed to provide the necessary evidence to support its claim the inventory-search exception applied, we find the district court should have granted Baylor's motion to suppress. We reverse the district court's ruling on the motion to suppress and remand the case to the district court for a new trial absent the evidence found in the vehicle. Because we are remanding the case for a new trial, we need not decide Baylor's other claims.

**REVERSED AND REMANDED.**